JONES *v.* STATE.

(Division B. Dec. 31, 1923.)

[98 South. 340. No. 23571.]

HOMICIDE. *Foundation for admission of dying declaration held sufficient.*

> A sufficient legal predicate for the admission of a dying declaration was laid, where the evidence showed that the declarant was seriously wounded and was in a dying condition at the time the declaration was made, and that she repeatedly stated that she

was shot to death and was going to die; there being nothing in the evidence to indicate that she ever entertained the slightest hope of recovery.

APPEAL from circuit court of Panola county.

HON. GREEK L. RICE, Judge.

Van Oscar Jones was convicted of murder, and he appeals. Affirmed.

*J. B. Boyles,* for appellant.

I submit that the purported dying declaration of the deceased was not admissible in evidence, and that the court below erred in admitting. It is well settled that this kind of evidence is at best weak, and that the courts should use great care and caution in admitting such testimony. *Lambeth* v. *State,* 23 Miss. 322; *Owens* v. *State,* 59 Miss. 547; *Lipscomb* v. *State,* 75 Miss. 559, 23 So. 230.

The declarant must realize that death is imminent or dissolution impending. It must be established that the declarant to the exclusion of all reasonable doubt was *in extremis. Lipscomb v. State, supra; Guest* v. *State,* 96 Miss. 871, 52 So. 211; *Bell* v. *State,* 72 Miss. 507, 17 So. 232.

It is unquestionably the evidence in this case that when the witness John Pressley reached the house where deceased was shot, she was attempting to climb on the walls of the room; and according to the testimony of Ethel Lee Pressley and Malissa Johnson the deceased was considerably excited, calling for help, and making such statements as: "I am shot to death! Lord have mercy! I am going to die! Get in bed with me, I am not going to harm you; Van Oscar shot me because I would not run off with him."

These statements were made according to the testimony of these witnesses about seven or eight o'clock in the morning. The deceased was shot about five o'clock

and lived until three o'clock in the afternoon. The doctor came shortly after these witnesses arrived and it will be observed from his testimony that, he said nothing about -the deceased having made any such statement to him.

The facts in this case are parallel with the case of *Fannie* v. *State,* reported 101 Miss. 378, 58 So. 2. In that case the deceased while in company with the man who went with him in search of a physician said: "I am going to die. Make haste and get the doctor. I am bleeding to death. I am going to die. Don't bother me and get the doctor." And again: "Make haste, Mama, and get the doctor. I am going to die."

The court in the opinion upon the facts in this case said: "In order that a dying declaration may be admissible in evidence, it must appear beyond a reasonable doubt to have been made under the realization and solemn sense of impending death. The deceased, at the time of making the declaration must have had no hope, however slight of recovery."

In the case at bar it is shown that the deceased made these purported statements in the morning about eight o'clock and died in the afternoon at three o'clock, and had probably been shot two hours before the statements were made. There is nothing in the evidence in the case at bar that shows beyond all reasonable doubt that the deceased really thought that death was impending. Her statements were nothing more than explanatory of fear and an excited condition of mind. Nowhere in the entire testimony was it claimed or stated by any witness that the deceased was suffering intensely, or that there was anything about her condition that would warrant her in believing that death was impending.

*H. T. Odom,* Assistant Attorney-General, for the state.

The dying declarations were introduced in evidence by Ethel Lee Pressley and Malissa Johnson. In order to de-

termine the competency of the dying declarations the court, at the request of counsel for appellant, examined witness Ethel Lee Pressley in the absence of the jury. After said examination the trial court was satisfied of the competency of the dying declarations and overruled an objection to their introduction.

An examination of the record as to the testimony under consideration will show that after the deceased had been wounded some two or three hours she frequently stated that she was going to die. The record fails to disclose any hope that the deceased expressed for recovery. These witnesses both testified that the deceased said that appellant shot her because she refused to go away with him. I respectfully submit that a reading of the evidence of these two witnesses will convince the court that the testimony was competent.

Cook, J., delivered the opinion of the court.

The appellant, Van Oscar Jones, was convicted of murder, and sentenced to life imprisonment in the penitentiary, from which judgment this appeal was prosecuted.

The testimony shows without dispute that appellant's wife was away from home on a visit to her relatives; that the deceased, Louvenia Smith, was visiting at the home of John Pressley, a neighbor of appellant; that the deceased went with appellant to his home and spent the night with him; that about five o'clock the following morning she was shot in the chest and died at three o'clock the following afternoon; that immediately after the shooting appellant went to the home of John Pressley and reported to him that he had shot the deceased; that John Pressley and his wife went to appellant's home and found the door locked, and, upon breaking the door, they found the wounded woman on the bed. The appellant testified that he had dressed for the purpose of carrying the deceased back to the home of her relatives; that

the deceased was sitting on the side of the bed preparing to dress, and that he was standing near the foot of the bed oiling his pistol when it was accidentally discharged; the bullet striking the deceased in the chest.

The state offered, and after a preliminary examination in the absence of the jury, the court admitted, as a dying declaration, a statement made by the deceased in which she said that the appellant shot her because she refused to go away with him. This statement was made in the presence of two witnesses, who testified that the deceased repeatedly stated that she was shot to death, and that she was going to die. The doctor who attended her shortly after the shooting testified that when he saw her "she was practically dead—cold from the waist down."

For a reversal of this case, the appellant relies principally upon the alleged error of the court in admitting as a dying declaration the statement of the deceased that appellant shot her because she refused to run off with him.

The proof in this case is that the deceased repeatedly expressed the conviction that she was going to die, and that she was in a dying condition at the time she made the statement. There is not a word in the record which indicates that she ever entertained the slightest hope of recovery, and we think the proof was sufficient to warrant the trial judge in believing beyond a reasonable doubt that the declaration was made under a solemn sense of impending death.

There is no merit in the only other assignment of error argued by counsel, and therefore the judgment of the court below will be affirmed.

*Affirmed.*